UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| **v.** ) | **Cause No.: 1:09-CR-74** |
| ) | |
| **CHRISTOPHER FOGGIE** ) | |

# OPINION AND ORDER

This matter is before the court for resolution of issues relating to the sentencing of the defendant, Christopher Foggie ("Foggie"). Foggie filed a Sentencing Memorandum on November 30, 2009. Docket at 28.[1] The United States of America ("the government") filed a response on December 30, 3009. Docket at 31. The court held a sentencing hearing on January 4, 2010, at which the defendant and the government were afforded an opportunity to present oral argument to support their respective positions concerning sentencing. The defendant also addressed the court, as is his right pursuant to Fed.R.Crim.P. 32(i)(4). For the reasons discussed below, the court determines that Foggie will be sentenced to a term of imprisonment of 40 months.

## DISCUSSION

Foggie was indicted on July 22, 2009, and charged with three counts of distribution of

---

[1] Foggie filed a Motion to Correct Scrivener's Error on January 4, 2010, and an Amended Sentencing Memorandum on that same date, in order to correct typographical errors in his original memorandum. The court granted the motion in open court and the Amended Sentencing Memorandum appears as docket entry 35. In this Opinion and Order, when the court refers and cites to "Defendant's Memorandum," the court is referring to the amended memorandum. (The government did not oppose Foggie's motion to file the amended memorandum.) *See* docket at 34.

cocaine base "crack," in violation of 21 U.S.C. § 841(a)(1). Docket at 12.[2] Foggie entered into a plea agreement with the government and, on August 10, 2009, pleaded guilty to Count 3 of the indictment. *See* docket entry at 21. As part of the plea agreement, the government agreed to dismiss Counts 1 and 2 of the Indictment at the time of Foggie's sentencing.

The U.S. Probation Office prepared a detailed Presentence Investigation Report ("PSIR") in this case and determined that Foggie had an Offense Level of 23 and a Criminal History Category of 1 under the United States Sentencing Guidelines ("U.S.S.G."). These calculations resulted in an advisory guideline range for imprisonment of 46 to 57 months. However, since Count 3 of the Indictment charged Foggie with distribution of five grams or more of crack, he faced a mandatory minimum sentence of 60 months pursuant to 21 U.S.C. § 841. Fortunately for Foggie, because he is in the lowest Criminal History Category, he qualifies for the "safety valve" provision found in 18 U.S.C. § 3553(f), which means the court has the discretion to sentence him to a term of imprisonment below that statutory minimum. The safety valve provision is incorporated into the U.S.S.G. at § 5C1.2. The government advocates a term of imprisonment of 46 months–the low end of the advisory guideline range–and Foggie argues that he should be sentenced to far less than that.

In his memorandum, Foggie notes that his advisory guideline sentence was calculated based on the 100 to 1 powder to crack cocaine ratio contained in the Sentencing Guidelines. He argues that the present 100 to 1 ratio used to calculate offense levels is inherently unfair, and results in a disparity in the lengths of sentences imposed on defendants who distribute crack

---

[2] Foggie was originally charged by way of a Criminal Complaint filed on July 13, 2009, but the Complaint was dismissed when the Indictment was filed.

cocaine as opposed to those who distribute powder cocaine (with the former receiving dramatically longer prison terms under the Sentencing Guidelines). Defendant's Memorandum, pp. 1-2.[3] Foggie states that if he had been "dealing [powder] cocaine his offense level would be 14 before the safety valve or a reduction for acceptance of responsibility. After application of the safety valve and a two point reduction for acceptance of responsibility, Foggie's offense level would be 12 and his criminal history category would remain at 1. Foggie's sentence would be 10 to 16 months." *Id.*, pp. 3-4.

Foggie also points out in his memorandum that he is young (only 20 years old), has no prior criminal history, and that "his sales [of crack] were for the purpose of supporting his own drug habit rather than an attempt to become a large scale criminal enteprenuer." *Id.*, p. 3. For these reasons, Foggie requests that the court sentence him to only 10 months imprisonment. *Id.*, p. 4.

The government responds by first pointing out that "[t]he current state of the law is that district courts must accurately calculate the sentencing guideline range, resolving contested sentencing issues by a preponderance of the evidence, and, if the court imposes a sentence outside of the guideline range, to explain why the defendant deserves a non-guideline sentence." Government's Memorandum, p. 1 (citing *United States v. George*, 403 F.3d 470, 472-73 (7th Cir. 2005) and *United States v. Dean*, 414 F.3d 725 (7th Cir. 2005)). Therefore, the government states

---

[3] Powers is referring to the penalties set by Congress in 1986 in the Anti-Drug Abuse Act, which were incorporated into the U.S.S.G. in § 2D1.1(c). By way of example, the threshold for a sentence of 10 years to life is triggered if a defendant is found guilty of distributing five kilograms of powder cocaine. That same sentence is triggered if a defendant is found guilty of distributing 50 grams of crack. A term of imprisonment of five to 40 years is triggered by 500 grams of powder cocaine but only five grams of crack.

3

that "[t]he starting point . . . is a sentence calculated under the crack cocaine guidelines." *Id.*, p. 2. Next, the government acknowledges that "[t]he position of the Department of Justice . . . is that Congress and the Sentencing Guidelines Commission should eliminate the difference between crack and powder sentencing cocaine guidelines. However, Congress has not yet determined whether, or how to, address this issue. Current DOJ policy provides that prosecutors 'may' in appropriate cases indicate they will not object to a reasonable variance from the current crack cocaine guideline range; however, prosecutors may also oppose a variance based upon case-specific factors." *Id.*[4] In this case, the government opposes a variance for several reasons. First, the government makes the very important point that the amount of drugs involved in Foggie's offense "involves a total of 40.58 grams of cocaine base 'crack.' This amount is a far cry from a typical 5 gram[] case." *Id.*, p. 3. The government also notes that by his own admission, Foggie was "a 'middle man,' [and] was clearly part of a larger organized web of narcotics distribution and had access to large quantities of drugs." *Id*. The government also takes issue with Foggie's assertion that he was merely selling drugs to support his own addiction. According to the government, Foggie's offense "was not an isolated incident, and was in fact a pattern of repetitive distribution by Foggie. Foggie sold crack on three separate occasion, once to a confidential informant, and twice to an undercover police officer. On each occasion, the

---

[4] The Department of Justice made its position known on the sentencing disparity issue in a Memorandum for all Federal Prosecutors issued on May 1, 2009. A copy of this memorandum is attached to Foggie's Amended Sentencing Memorandum as exhibit A. In the memo, Deputy Attorney General David Ogden wrote that "[t]he President and Attorney General believe Congress should eliminate the sentencing disparity between crack cocaine and powder cocaine." *Id*. The memo goes on that state, as the government points out in the present case, that federal prosecutors have the discretion not to oppose a sentence variance in a particular case, but may oppose such a variance if they believe a defendant's offenses and/or the circumstances of those offenses do not warrant a sentence below the guideline range. *Id*.

amount of drugs distributed was larger. On the day the search warrant was executed, Foggie had made arrangements to deliver an ounce of crack to the undercover police officer. Ultimately, when Foggie was arrested . . . he had over 32 grams (in excess of one ounce) of crack on his person." *Id*., p. 4. This is strong evidence, contends the government, that Foggie was dealing much larger quantities of crack than would be necessary to support his own habit. *Id*. In addition, the government points out that the PSIR "indicates that Foggie had utilities in his name at [a residence in Fort Wayne]. Foggie is a grown man, and he is getting money for clothes, food, and other living needs from somewhere. He is not employed, therefore, it is more than reasonable to conclude that his drug dealing activity, particularly in light of the quantity to which he had access, was for profit and not solely to support a habit." *Id*.

The government's points are well taken. The amount of crack cocaine involved in this case was very large, and Foggie sold crack on several occasions before he was finally arrested. The amount of drugs involved, and the fact that Foggie admitted to being a "middle man" (i.e. buying or being "fronted" drugs by others, then reselling them himself) belies his contention that he was a proverbial "small time" drug dealer who was merely trying to support his own habit. On the other hand, Foggie, like so many criminal defendants who come before this court, faces a much longer sentence due to the sentencing disparity between crack cocaine cases and powder cocaine cases–a disparity, which as noted above, is acknowledged even by the U.S. Department of Justice to be inherently unfair.

The task before the court in every criminal case is to impose a sentence "sufficient, but not greater than necessary, to comply with the purposes set forth in" § 3553. In order to accomplish this goal, § 3553 states that the sentencing court should consider the following

5

factors:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed–
>   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>   (B) to afford adequate deterrence to criminal conduct;
>   (C) to protect the public from further crimes of the defendant; and
>   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
>
> . . .
>
> (4) [the advisory guideline range];
> (5) any pertinent policy statement issued by the Sentencing Commission . . .;
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a)(1)-(7). The task then, is for the sentencing court to decide what constitutes a sentence that is "sufficient" while "not greater than necessary" to accomplish the traditional goals of criminal sentencing. But those seemingly straightforward and concise words belie the difficult nature of the task facing a court when it is determining what sentence to impose on a criminal defendant. When imposing a term of imprisonment on a defendant, the court must decide, to the best of its ability based on the circumstances of each case, how long that defendant should be deprived of his or her freedom so as to punish the defendant for having committed a serious offense and prevent the defendant from committing offenses in the future. This aspect of sentencing, of course, is aimed at accomplishing the goals of "punishment," "deterrence," and "rehabilitation," three of the important goals of criminal sentencing. At the same time, the court must be mindful of society's interest in being free from the defendant's criminal activities.

There can be no doubt whatsoever that when a defendant's offenses involve trafficking in dangerous drugs the dangers posed to society are tremendous indeed. And criminal sentencing also has the goal of deterring individuals *other than* the defendant from committing similar crimes. Neither a criminal defendant himself nor society at large benefits from sentences that are so inconsequential that they fail to serve as a deterrent to criminal acts. A proverbial "slap on the wrist" not only fails to deter criminal activity, it may serve to encourage it by causing people who might so much as contemplate engaging in criminal behavior to believe that the anticipate rewards they might reap will outweigh any risk involved. Lax sentences make crimes look like reasonable gambles.

After considering the arguments presented by both sides in their briefs and at oral argument, as well as the defendant's expression of remorse before the court, and after examining the specific facts relevant to this case, the court determines that a term of imprisonment of 40 months is sufficient, but not greater than necessary, to accomplish the traditional goals of criminal sentencing. A sentence of 40 months will serve to punish Foggie for his offense and all relevant conduct, will deter him from engaging in criminal activity in the future, and will protect the public from the dangers of drug trafficking by the defendant. Also, the sentence affords the defendant some amount of relief from the disparity in sentences between crack cocaine and powder cocaine cases.

It is also important to note that in this particular case, Foggie is already getting significant relief by virtue of the fact that he qualified for the safety valve provision in § 3553(f). Again, Foggie argues that he has no prior criminal convictions, no history of violence, and that no firearms were associated with his drug trafficking offenses. Those factors are specifically

7

taken into account by § 3553(f) and he therefore benefits from a sentence reduction from 60 months to 46 months. An additional variance of six months affords him at least some further relief from the sentencing disparity issue he raises. On the other hand, the court concludes that a sentence of 10 to 16 months, as advocated by Foggie, is woefully insufficient given the serious nature of Foggie's offenses, especially the large amounts of drugs he was distributing.

## CONCLUSION

For the reasons discussed in this Opinion and Order, the court concludes that the defendant, Christopher Foggie, shall be sentenced to a term of imprisonment of 40 months.

Date: January 7, 2010.

/s/ William C. Lee, Judge

United States District Court
Northern District of Indiana